Compañía Popular de Transporte, Inc., demandante y apelante, *v.* Unión de Empleados de Transporte et al., dedandados y apelados.

Núm. 9553.—*Sometido:* Junio 23, 1948. *Resuelto:* Julio 19, 1949.

180

*Santos P. Amadeo* y *Artemio P. Rodríguez,* abogados de la apelante; *Ramón Cancio* y *Pedro Santana,* abogados del Departamento del Trabajo y a su vez de los apelados; *E. T. Fiddler, José G. González, Tomás I. Nido* y *Mariano Canales; James A. Beverley, R. Castro Fernández* y *José López Baralt; Charles R. Hartzell, Rafael O. Fernández* y *José L. Novas,* y *Gabriel de la Haba,* como *Amici Curiae.*

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

### EN RECONSIDERACION

La compañía demandante es una empresa de servicio público que se dedica a transportar pasajeros mediante paga. Radicó demanda contra algunos de sus empleados y contra la Unión de éstos, solicitando sentencia declaratoria con el fin de resolver las controversias existentes entre ella y estos empleados en cuanto a si la compañía venía obligada a pagarle a ellos por un día de descanso a tenor con la Ley núm. 289, Leyes de Puerto Rico, 1946 y en caso afirmativo cuánto debía pagarles. La compañía ha apelado de la sentencia de la corte de distrito.

### I

El primer señalamiento es que la corte inferior cometió error al resolver que de conformidad con la Ley núm. 289 la compañía debe pagarle a sus empleados por el día de descanso establecido en dicha Ley, aun cuando éstos no trabajen dicho día. Se comprenderá mejor este error si examinamos la historia de nuestras leyes que proveen un día de descanso.

La Legislatura ha dispuesto desde el 1902 que los establecimientos comerciales e industriales permanecerán cerrados los domingos y algunas horas específicas. Artículo 553, Código Penal, ed. 1937. Para los diversos cambios efectuados en esta Ley, véanse Código Penal de 1902, artículo 553; Ley núm. 131, Leyes de Puerto Rico, 1913, Sesión Extraordinaria (pág. 88); Ley núm. 24, Leyes de

Puerto Rico, 1914 (pág. 177); Ley núm. 26, Leyes de Puerto Rico, 1917, Sesión Extraordinaria, Vol. II (pág. 273); Ley núm. 3, Leyes de Puerto Rico, 1918 (pág. 17); Ley núm. 18, Leyes de Puerto Rico, 1925 (pág. 17); Ley núm. 54, Leyes de Puerto Rico, 1930 (pág. 409); Ley núm. 110, Leyes de Puerto Rico, 1937 (Leyes de 1936–37, pág. 268); Ley núm. 306, Leyes de Puerto Rico, 1938 (pág. 568); Ley núm. 3, Leyes de Puerto Rico, 1947, Quinta Sesión Extraordinaria (pág. 297).

La Ley del Cierre siempre ha eximido de esta disposición a un número de industrias, incluyendo las empresas de utilidad pública, a quienes como cuestión de necesidad pública se les permite permanecer abiertas continuamente. Pero en vista del hecho de que algunos o todos los empleados de estas industrias exentas podrían ser obligados a trabajar los domingos, la Legislatura, empezando con la Ley núm. 26 de 1917, dispuso en las referidas leyes que los empleados de estas industrias exentas "que presten sus servicios sobre la base de un salario anual, mensual, semanal o en cualquier otra forma que no sea por jornal o ajuste a un tanto alzado, tendrán derecho a un día de descanso por cada seis de trabajo, con salario íntegro." Para el historial de estas leyes, véase el caso de *Parrondo* v. *L. Rodríguez & Co.,* 64 D.P.R. 438.

Si bien la disposición sobre un día de descanso para los empleados de las industrias exentas estuvo en vigor desde el 1917, aparentemente no surgió pleito alguno sobre ella hasta el caso de *Compañía Popular* v. *Corte,* 63 D.P.R. 121. En dicho caso un empleado de la empresa de servicio público aquí envuelta había convenido en trabajar siete días semanales por un salario semanal. Resolvimos que, no obstante la existencia de este convenio, el empleado tenía derecho a recibir paga adicional por trabajar el séptimo día. Llegamos a este resultado por el fundamento de política pública según se establece ésta en el artículo 4 del

Código Civil y para evitar el enriquecimiento injusto del patrono.

El próximo paso surgió en *Compañía Popular* v. *Corte*, 64 D.P.R. 383. En esta opinión se trataba de un incidente posterior del caso reportado en 63 D.P.R. 121. Resolvimos que bajo las referidas leyes sólo los empleados que recibían salarios anuales, mensuales o semanales estaban cubiertos por las leyes, y que los empleados a quienes se les pagaba por hora o por día no estaban incluídos en las mismas.

Finalmente, esta disposición de ley, según constaba en la sección 3 de la Ley núm. 26, Leyes de Puerto Rico, 1917, Sesión Extraordinaria, Tomo 2 (pág. 273), fué declarada inválida porque la materia contenida en la sección 3 no estaba comprendida en el título de la ley, según lo exige el artículo 34 del Acta Orgánica. *Laboy* v. *Corporación Azucarera, etc.*, 65 D.P.R. 422.

La Legislatura entonces aprobó la Ley núm. 289, Leyes de Puerto Rico, 1946 ((1) pág. 683), que lee en parte como sigue:

"Sección 1.—Todo empleado de cualquier establecimiento comercial o industrial, empresa o negocio lucrativo que no estuviere sujeto a las disposiciones sobre cierre al público del artículo 553 del Código Penal de Puerto Rico, según ha sido subsiguientemente enmendado, tendrá derecho a un día de descanso por cada seis (6) días de trabajo.

"A los efectos de esta Ley, se entenderá por día de descanso un período de veinticuatro (24) horas consecutivas.

"Sección 2.—Las disposiciones de esta Ley no se aplicarán a trabajos ocasionales o por ajuste.

"Sección 3.—Ningún patrono podrá deducir suma alguna del salario de ningún empleado por concepto del día de descanso que establece esta Ley.

"Sección 4.—Todo patrono que emplee o permita que un empleado trabaje durante el día de descanso que se establece en esta Ley vendrá obligado a pagarle por las horas trabajadas durante dicho día de descanso un tipo de salario igual al doble del tipo convenido para las horas regulares.

"Sección 5.—A los efectos de esta Ley, se entenderá por empleados a cualquier empleado, obrero, dependiente, trabajador, jornalero o persona que preste servicio para un patrono mediante salario, sueldo o cualquier otra forma de compensación."

La Ley núm. 289 se aprobó no solamente para subsanar el título defectuoso de la ley anterior, si que también para ampliar sus disposiciones con el fin de incluir los empleados que recibían paga por hora o por día. Pero la Legislatura no dejó intacta la disposición de que los empleados a quienes era aplicable "tendrán derecho a un día de descanso por cada seis de trabajo, con salario íntegro." La Legislatura eliminó la frase "con salario íntegro". Por consiguiente la Ley provee ahora solamente un día de descanso por cada seis de trabajo.

Precisa concluir que la Legislatura le concedió a los empleados que recibían paga por hora o por día en las industrias exentas· de las disposiciones de la Ley del Cierre los mismos privilegios que tienen los empleados de las industrias que están obligadas a cerrar los domingos. Los patronos comprendidos en esta última categoría están obligados a conceder a sus empleados que trabajan por hora o por día un día de descanso el domingo; pero éstos sólo reciben la paga que se ganan trabajando los seis días. *Parrondo v. L. Rodríguez & Co.*, supra, pág. 449. Los empleados de las industrias exentas pueden o no trabajar el domingo, dependiendo de las necesidades de sus patronos específicos. Pero trabajando o no el domingo, bajo la Ley núm. 289 tienen derecho a un día de descanso—ya sea el domingo o algún otro día—después de trabajar durante seis días. Sin embargo, igual que en el caso de los empleados de las industrias no exentas, que descansan el domingo pero no reciben paga adicional por el mismo, la Ley núm. 289 provee un día de descanso para los empleados que trabajan por hora o por día en las industrias exentas sin paga adicional por el día de descanso.

La corte de distrito resolvió que los demandados tienen derecho a un día de descanso con paga. Es difícil creer que la Legislatura tuvo por miras cometer un discrimen en esta forma contra las industrias a las cuales debido a la necesidad pública se les permite trabajar los domingos. Esto es particularmente cierto donde, como aquí, algunos o todos los empleados de hecho toman su día de descanso el domingo en la misma forma que los empleados lo toman en las industrias corrientes. Resolverlo así, equivaldría a decir que so pretexto de conceder un privilegio la Legislatura estaba imponiendo una penalidad, aun cuando el supuesto privilegio no se ejercitase. Si la Ley núm. 289 expresamente lo ordenase, no tendríamos otra alternativa que ponerlo en vigor, siempre y cuando dicha ley fuera constitucional. Pero no venimos obligados a inyectar en la Ley frases que de ella no aparecen con el fin de llegar a un resultado inequitativo extraño a la intención de la Legislatura.

La sección 4 refuerza esta interpretación de la sección 1 de la Ley núm. 289. Dispone que si un empleado trabaja su día de descanso, recibirá un tipo de salario igual al doble del tipo convenido para las horas regulares. Esto es penalidad o paga extra exactamente igual a aquélla que se encuentra en las leyes y decretos sobre salario mínimo y horas máximas. Se ordena paga doble solamente por trabajo extra, teniendo el tipo mayor de salario el propósito de desalentar el trabajo extra. Pero si no se realiza trabajo alguno fuera de las horas regulares, no hay paga por tiempo no trabajado. Y se desalienta, aunque si bien no se prohibe, la semana de siete días de trabajo, al disponer (1) un día de descanso sin paga después de seis días de trabajo y (2) paga doble si se trabaja el día de descanso.

El resultado es que la Ley núm. 289 establece una semana normal de seis días de trabajo para las industrias exentas con el fin de igualar las condiciones de las últimas con aquéllas prevalecientes en las industrias corrientes.

En ambas categorías de industrias el trabajo debe suspenderse en cierto momento—después de una semana de trabajo de seis días. Una industria no exenta no puede funcionar el domingo. Si un patrono exento opta por hacer uso de su privilegio de trabajar una semana de siete días, debe pagar por el séptimo día salario doble al tipo convenido para las horas regulares. Pero si trabaja a base de una semana de seis días, éste está exactamente en la misma posición que los patronos de las industrias corrientes.

Resolver que bajo la sección 1 un empleado recibe paga por el séptimo día sin trabajarlo, sería frustrar la intención de la Legislatura expresada en la sección 4 al efecto de que el trabajo por el séptimo día deberá pagarse al doble del tipo sencillo. Es decir, según esa interpretación, un empleado que trabaja durante el séptimo día recibiría solamente paga sencilla en adición a la paga ordinaria a que ya tenía derecho sin trabajar. Y, como consecuencia, los patronos en las industrias exentas serían llevados a una semana de siete días o a una semana de cinco días, mientras que la Legislatura tuvo por miras por la Ley núm. 289 estimular el establecimiento de una semana normal de seis días aun para las industrias exentas. Por tanto parece claro de las secciones 1 y 4 que el empleado tiene derecho a un día de descanso sin paga.

Esta conclusión está de acuerdo con el título de la Ley núm. 289. El título no dice que la Ley provee un día de descanso con paga. Por el contrario dice que es una Ley "Fijando un día de descanso por cada seis (6) días de trabajo . . . ; Disponiendo que las horas trabajadas durante el día de descanso se pagarán a un tipo de salario igual al doble del tipo convenido por las horas regulares . . . ".

No es probable que se hubiera insistido en la contención de que la Ley núm. 289 disponía un día de descanso con paga, si las leyes que la precedieron no hubieran provisto un día de descanso "con salario íntegro". Quizá baste para

refutar este argumento indicar sencillamente que la frase "con salario íntegro" fué omitida de la Ley núm. 289, sin investigar los motivos de la Legislatura para hacer este cambio en la Ley. Pero creemos propio detallar, si nos es posible, el propósito que tuvo la Legislatura para eliminar esta disposición de la Ley. Las leyes anteriores cubrían solamente a los empleados que recibían salarios anuales, mensuales o semanales. Al aprobar dichas leyes, la Legislatura quizá vislumbró la posibilidad de que se frustraran sus propósitos en parte mediante la reducción de tales salarios por patronos que operaban a base de una semana de siete días. En consecuencia disponía que tales empleados deberían recibir un día de descanso "con salario íntegro". Pero al ampliarse estas leyes por la Ley núm. 289 para incluir a los empleados por hora o por día, se eliminó esta frase. La Legislatura pudo haber pensado que la frase ya no era adecuada porque a los empleados por hora o por día no se les paga un salario, no importa el tiempo trabajado; se les paga lo que ganan al trabajar cierto número de horas o días.

Sin embargo, cuando la Legislatura aprobó la Ley núm. 289, no perdió de vista el hecho de que todavía era necesario proteger a los empleados que percibían salarios anuales, mensuales o semanales. La sección 3 fué encaminada principalmente a proteger a tales empleados contra posibles intentos de reducirles sus salarios en vista del requisito de que se les concediera un día de descanso. Considerada en esta forma, la sección 3 es algo análoga a la disposición de las leyes anteriores que se aplicaban solamente a los empleados que recibían un salario anual, mensual o semanal y que disponían que recibirían su día de descanso "con salario íntegro". Tanto las leyes anteriores como la sección 3 fueron dirigidas a obtener el mismo trato para tales empleados en las industrias exentas que existía ya en las industrias no exentas. Pero de igual forma que las leyes anteriores no eran aplicables a los empleados por hora o por

día, la sección 3 no tiene aplicación alguna con referencia al problema del pago por el día de descanso de estos últimos. Si trabajan seis días, se les paga de acuerdo con el número de horas o días que trabajen. Si descansan el séptimo día, no se les paga por el mismo. Si lo trabajan, reciben paga doble. Bajo cualquiera de estas alternativas, nunca surge la cuestión de si bajo la sección 3 se les deduce el salario por su día de descanso. Finalmente, no puede sostenerse que la prohibición de la sección 3 contra deducción de salario devengado puede entenderse como una disposición afirmativa para el pago de salario no devengado; v.g., salario por un séptimo día no trabajado. Si algo hace, la sección 3 de su propia faz provee lo contrario: a usted se le paga lo que se ha ganado, y no se permite deducción alguna de eso.

Si bien no es concluyente, es significativo el hecho de que, hasta donde sepamos, ningún decreto de salario mínimo, incluyendo el Núm. 12 que cubre a la demandante,(¹) ha provisto un día de descanso con paga. La Junta de Salario Mínimo es experta en estas cuestiones. Ha estado alerta para proteger los intereses legítimos de los empleados. Sus decretos contienen muchas disposiciones a que tienen derecho los empleados en virtud de leyes generales. Al no disponer en decreto alguno un día de descanso con paga, indudablemente ha llegado a la conclusión de que la Ley núm. 289 no obliga este resultado.

Nos damos cuenta de que el argumento al efecto de que un día de descanso sin paga, especialmente para los trabajadores por hora o por día, es ilusorio. Pero podría aducirse el mismo argumento en cuanto a un gran número de empleados de las industrias corrientes que descansan el domingo sin paga por ese día. La contestación en ambos casos debe ser que la Legislatura ha limitado el día de trabajo y la semana de trabajo y ha provisto paga doble por tra-

(¹) Véase *American Railroad Company* v. *Junta de Salario Mínimo*, 68 D.P.R. 796.

bajo en exceso de dicho límite. Ley núm. 379, Leyes de Puerto Rico, 1948. Y la Junta de Salario Mínimo ha establecido mediante varios decretos horas máximas y salarios mínimos, que presumiblemente a juicio suyo permiten a los empleados vivir durante siete días con paga de seis días. Finalmente, las partes están en libertad de negociar sobre este punto mediante convenios colectivos. Pero no compete a este Tribunal actuar en contra de la Legislatura, de la Junta y del convenio colectivo de las partes, insertando en la Ley núm. 289 una disposición por un día de descanso con paga cuando ésta no aparece en la Ley, en el Decreto de Salario Mínimo núm. 12, ni en el convenio colectivo de las partes.

La paga extra por trabajo realizado durante el día de descanso es una disposición corriente. Pero no sabemos de ley o decreto alguno que provea el pago cuando de hecho se disfruta del día de descanso. En una situación donde la Legislatura ha querido disponer que se pague sin trabajar, expresamente así lo ha hecho. Véase la Ley núm. 3, Leyes de Puerto Rico, 1942 ((1) pág. 285), según fué enmendada por la Ley núm. 398, Leyes de Puerto Rico, 1947 ((1) pág. 767), en relación con obreras embarazadas. La Ley núm. 289 no contiene tal disposición expresa.

Otro factor que nos convence de que la Ley núm. 289 dispuso un día de descanso sin paga es que la Legislatura no estableció normas para determinar la cantidad a ser pagada por el día de descanso a empleados por hora que trabajen irregularmente. Según se desprende de nuestra opinión original, resolver que el día de descanso fué concedido con paga, requeriría que ideáramos varias fórmulas bajo las cuales se les pague a tales empleados por un día de descanso. No vacilaríamos en trazar estas normas si la Legislatura hubiera dispuesto clara y específicamente que tales empleados recibirían un día de descanso con paga. Véase el caso de *Bay Ridge Operating Co., Inc.* v. *Aaron, et*

*al.*, 334 U.S. 446, resuelto el 7 de junio de 1948, en que la fórmula para el tipo ordinario de paga bajo la Ley de Normas Razonables de Trabajo, fué ideada por la Corte Suprema de los Estados Unidos no obstante el hecho de que (pág. 13 del alcance de la opinión) "El estatuto no tiene definición alguna del tipo ordinario de paga ni reglas para su determinación." Pero no podemos convenir en que primeramente debiéramos insertar en el estatuto la disposición "con paga" y luego trazar normas que tampoco están en la Ley. Habiendo llegado a la conclusión de que la Ley no dispone un día de descanso con paga, dejamos la Ley núm. 289 tal cual la encontramos.([2])

Convenimos con la demandante-apelante en que la corte de distrito cometió el primer error señalado al resolver que bajo la Ley núm. 289 los empleados de la demandante tienen derecho a un día de descanso con paga.([3])

---

([2])Deliberadamente evitamos caracterizar el resultado contrario como "legislación judicial". Aquéllos que emplean esta frase se enfrascan en el uso de calificativos despectivos más bien que en exponer un argumento. Véase *Pérez Segovia* v. *Corte*, ante, pág. 4, escolio 5. La demandante se opone a que se inserte la frase "con paga" en la sección 1 de la Ley núm. 289, y llama esta actuación "legislación judicial". Pero a renglón seguido enérgica, y correctamente, sostiene que la palabra "consecutivos" debe insertarse en la sección 1. Véase la Parte III. Aquí el calificativo se transforma en "interpretación judicial" más bien que en "legislación judicial". Por consiguiente el calificativo parece que depende del resultado que uno prefiera. No vemos provecho alguno en aceptar uno u otro. Nos limitamos a la difícil tarea de tratar de determinar cuál fué la intención de la Legislatura.

([3])En el sexto error la compañía sostiene que la Ley núm. 289 es aplicable únicamente a los empleados con un salario fijo y no a los obreros cuyos salarios fluctúan de acuerdo con el número de horas que han trabajado. La compañía descansa en la sección 3 que provee que ningún patrono deducirá suma alguna de cualquier *salario* de cualquier empleado por el día de descanso. Además de las razones que ya expusimos en la discusión del primer error para rechazar este argumento, las disposiciones específicas de la sección 5 concediendo un día de descanso a los empleados que trabajen por un "salario, sueldo o cualquier otra forma de compensación", refutan esta contención. Sin embargo, según hemos visto en la discusión del primer error, tales empleados reciben un día de descanso sin paga. Pero si el empleado trabaja en vez de descansar el día de descanso, según indicó correctamente la corte de distrito, bajo la sección 4 dicho empleado recibe doble paga, no triple, al tipo de salario por hora sencilla de trabajo.

## II

La apelante señala como segundo error la alegada resolución de la corte de distrito al efecto de que los empleados de su taller de mecánica tienen derecho a paga por el día de descanso, sin trabajarlo. La corte inferior no tomó ninguna decisión específica sobre esta cuestión; pero suponemos que su decisión general cubrió este punto.

Ya hemos resuelto en la Parte I que aun cuando la Ley núm. 289 se aplicase a un empleado, éste tiene derecho a un día de descanso, pero sin paga. Por tanto, la corte inferior cometió error al resolver que los empleados del taller tienen derecho a paga por su día de descanso. Pero todavía queda la cuestión de si la Ley, propiamente dicha, es aplicable a ellos.

Según las alegaciones de la demanda, admitidas por los demandados, Rafael García y Félix Miranda trabajaban en el taller de la compañía y no en su servicio de transportación; no habían trabajado los domingos antes de o desde el 9 de abril de 1946, día en que entró en vigor la Ley núm. 289; si trabajaron los domingos, recibieron doble paga; y la compañía firmó con sus empleados el 1 de enero de 1946 un convenio colectivo para el año natural de 1946.

No podemos convenir con la apelante en que la Ley núm. 289 no es aplicable a García y a Miranda porque ellos trabajen en el taller de mecánica más bien que en las operaciones de transporte de esta empresa de utilidad pública. De su propia faz esta Ley se aplica a todos los empleados de empresas de servicio público, y no simplemente a aquéllos que desempeñan deberes que se extienden a los siete días de la semana. Quizás la Legislatura pudo crear una fórmula por la cual la Ley núm. 289 quedaba restringida a esta última clase de empleados, y pudo haber provisto que los empleados de las empresas de utilidad pública cuyos servicios no se necesiten los domingos tendrán derecho a un día de decanso durante los domingos a tenor con el artículo

553 del Código Penal. Pero la Legislatura optó porque la Ley núm. 289 fuera aplicable incondicionalmente a todos los empleados de las compañías de servicio público.

Una vez que se dilucida la cuestión de la aplicabilidad, es difícil ver la existencia de problema alguno en cuanto a estos empleados. El *Exhibit* I, acompañado a la demanda y que se hizo formar parte de la misma, demuestra las horas que los empleados demandados trabajaron, los días en que trabajaron, y su paga por hora. El exhibit indica también que antes de la aprobación de la Ley núm. 289, la semana de trabajo para estos empleados empezaba, por razones de la contabilidad, los jueves. Pero si la compañía puede probar que García y Miranda trabajaban seis días a la semana y no trabajaban los domingos, sus temores de que se le obligue a dar a estos empleados dos días de descanso—el domingo, día regular, y otro día, contando siete días desde el jueves—carecen de fundamento. Enfocando la cuestión íntegramente más bien que limitándonos a la fecha de vigencia de la Ley, vemos que estos dos empleados trabajaron seis de cada siete días, toda vez que tuvieron el domingo libre. Bajo la Ley habrían recibido paga doble si debido a alguna emergencia hubieran trabajado el domingo, su día regular de descanso.

En el alegato de la compañía hay alguna discusión en relación con este error acerca del convenio colectivo. Si la Legislatura ha otorgado a los empleados de la demandada ciertos derechos mediante una ley válida, ningún convenio colectivo, ya sea firmado antes o después de la aprobación de la ley, puede menoscabar estos derechos. De cualquier modo, no podemos considerar el efecto del convenio colectivo sobre esta cuestión porque el mismo no está debidamente ante nos.

Éste es un recurso de sentencia declaratoria resuelto a base de una moción de la demandante solicitando sentencia sumaria, luego de los demandados haber radicado su contestación. En su consecuencia, no se adujo prueba. La única alegación de la demanda en relación con el convenio colec-

tivo, es que el mismo fijaba la paga por hora, según resulta del Exhibit 1. De dicho exhibit no se desprende que García trabajara un domingo. Miranda aparece que trabajó cinco domingos entre enero 1 y junio 19, 1946. En cuatro de ellos trabajó nueve horas; en uno, diez. Su paga por hora aparece como $0.528, sin indicación alguna en cuanto a si iban a percibir $0.528 por hora o habría de doblarse por trabajar el domingo, su día regular de descanso. Por consiguiente, de las alegaciones y el Exhibit I no surgen los términos del convenio colectivo en relación con la paga por el trabajo realizado los domingos por los empleados del taller como eran García y Miranda. Y el convenio colectivo propiamente dicho no está en el récord. En consecuencia, no tenemos ante nos nada en qué basar una decisión en cuanto a qué efecto, si alguno, tuvo el convenio colectivo sobre este caso en tanto en cuanto concierne a García y a Miranda.

El resultado práctico es que, independientemente del convenio colectivo, si los empleados del taller de la compañía como García y Miranda trabajan desde el lunes hasta el sábado, éstos tienen derecho a descansar el domingo y a recibir paga de seis días. Si trabajan el domingo, su día regular de descanso, tienen derecho a paga igual al doble del tipo sencillo convenido. Por consiguiente se cometió en parte el segundo error: la corte inferior no cometió error al resolver que la Ley núm. 289 es aplicable a los empleados del taller de la compañía; pero erró al resolver que tenían derecho al día de descanso con paga.

## III

Los señalamientos tercero y cuarto son similares. Ambos tratan de la decisión de la corte de distrito al efecto de que los seis días de trabajo que le dan derecho al empleado al día de descanso con paga, no tienen que ser consecutivos.

Alega la compañía que el propósito de la Ley núm. 289 es concederle al empleado un día de descanso con el fin de

que reponga sus energías físicas, a tenor con el plan divino de trabajar seis días y descansar el séptimo; que si bien la Ley no usa expresamente la frase "días consecutivos", a la luz de sus propósitos debe necesariamente suponer seis días consecutivos de trabajo, seguidos por un día de descanso; que el propósito humano de la ley no sería cumplido concediendo un día de descanso a una persona que acumuló seis días de trabajo trabajando un día a la semana o un día al año; que la Junta de Salario Mínimo ha reconocido la validez de este argumento disponiendo en el Decreto núm. 12 que comprende el servicio de transportación que todo empleado tendrá derecho a un día de descanso después de trabajar seis días consecutivos.

Al argumentar estos errores en su alegato los apelados, quienes están representados por abogados del Departamento del Trabajo, hacen ciertas concesiones que favorecen la posición de la apelante. Admiten (1) que no es irrazonable argumentar que los días trabajados deben ser consecutivos, a pesar del hecho de que la Ley núm. 289 no lo dispone expresamente; (2) que la historia legislativa de la Ley núm. 289 parece indicar este resultado; (3) que el argumento a favor de esta posición cobra fuerza por la relación existente entre la Ley núm. 289 y el artículo 553 del Código Penal; (4) que como cuestión práctica bajo el artículo 553 los empleados generalmente, si bien no necesariamente, trabajan seis días consecutivos antes de descanar el domingo; y (5) que el propósito evidente de la Ley núm. 289 de proteger la salud de los empleados necesariamente exige por implicación que los seis días deben trabajarse consecutivamente.

Si los apelados no hubieran expuesto ningún otro argumento sobre este punto, lo decidiríamos sin más a favor de la apelante, basados en las concesiones de los apelados. Pero los apelados siguen alegando que la conclusión contraria no está desprovista de fundamento. Arguyen que el no haber la sección 1 de la Ley provisto expresamente que un em-

pleado deberá trabajar seis días consecutivos con el fin de tener derecho a un día de descanso, adquiere significación a la luz de la sección 2 que dispone que la Ley no será aplicable a trabajos ocasionales. No podemos convenir con este argumento. El que un empleado que ha trabajado seis días de una semana específica sea o no un empleado ocasional, depende de los hechos de su caso específico. Pero no podemos ver en qué forma la determinación de dicho problema nos ayuda en la tarea de descubrir si bajo la Ley núm. 289, leída en su totalidad, los seis días de trabajo de los empleados que no son ocasionales deben ser consecutivos con el fin de que tengan derecho a un día de descanso.

Seguidamente alegan los apelados que la Ley núm. 289 tuvo por objeto no solamente proteger la salud y aumentar la producción de los empleados concediéndoles un día de descanso, sino también combatir el desempleo. Pero aun si conviniéramos en que la creación de empleos sea un fin secundario de la Ley núm. 289, no podemos decir que esto por sí solo es suficiente para demostrar que fué la intención legislativa que los seis días de trabajo no fueran consecutivos.

Los apelados concluyen su argumento sobre este punto afirmando que una interpretación de la Ley en que se dé cabida en la práctica al término medio posible entre los seis días consecutivos de trabajo sobre los cuales la Ley no habla en su sección 1 y el trabajo ocasional que expresamente excluye en la sección 2, le daría el debido cumplimiento al propósito legislativo.

Los apelados admiten correctamente que (1) la historia legislativa de la Ley núm. 289, (2) su relación con el artículo 553 del Código Penal y (3) los propósitos principales de la Ley—proteger la salud de los empleados y aumentar su capacidad productiva mediante el descanso—nos llevan al requisito de seis días consecutivos de trabajo más bien que al resultado a que llegó la corte de distrito bajo el cual el traba-

jar seis días, no importa lo intermitentemente que sea, le da derecho al empleado a un día de descanso mediante paga. Y finalmente, encontramos que es significativo el hecho de que el Decreto núm. 12 de la Junta de Salario Mínimo, que cubre el servicio de transportación, disponga que todo empleado permanente tendrá derecho a un día de descanso por cada seis días consecutivos de trabajo.

Si fuere posible llegar a una solución intermedia, según sugieren los apelados, quizás estaríamos dispuestos a adoptarla. La dificultad estriba en que sobre este punto no se nos ha sugerido tal solución definitiva y nos ha sido imposible encontrar una.

Sobre todo, una ley que regula las relaciones entre patronos y obreros, debe gozar de una certeza razonable. Bajo la fórmula de la corte de distrito, o aun bajo alguna posición intermedia, ni el patrono ni el empleado sabrían nunca qué constituye la semana de trabajo y qué día sería el de descanso. Cuando existe solución de continuidad en el trabajo, los restantes días trabajados, a los fines de calcular el trabajo de seis días, se juntarían con parte de la próxima semana de trabajo, con posibles resultados desastrosos para ambas partes. Para evitar la doble paga bajo la sección 4, el patrono vendría obligado a conceder y el empleado vendría obligado a aceptar, un día de descanso en medio de la próxima semana normal de trabajo. A tal resultado caótico no debe llegarse a menos que lo exija la Ley.

Por otro lado, si la Ley núm. 289 es interpretada en el sentido de que siete días son una semana de trabajo, separadamente y como una unidad para cada empleado, las partes comprenderán sus respectivos derechos y deberes al final de cada período de siete días y el fin primordial de la Ley— un día de descanso cada siete días—será cumplido. El segregar cada período de siete días. en esta forma y determinar los respectivos derechos y responsabilidades de los empleados y patronos en ese momento, constituye un método si-

milar al de calcular a base de años enteros el ingreso para fines contributivos, a pesar del hecho de que frecuentemente no se obtiene el ingreso sobre una base automáticamente anual. Véase *Roig* v. *Tribunal de Contribuciones,* 65 D.P.R. 445.

Tomando cada siete días como la unidad de medida, es obvio que, empezando con el primer día después que el empleado disfruta de su día regular de descanso, éste debe trabajar seis días consecutivos con el fin de que pueda tener derecho a descansar el séptimo día. Y el dejar de trabajar algún día en medio de la semana no empieza, a los fines de recibir un día de descanso sin paga, un nuevo período de seis días consecutivos de trabajo. Resolverlo así equivaldría a precipitar el caos que nuestra decisión en este caso trata de evitar, viniendo el empleado obligado a descansar un día en que tanto el patrono como él desean que se trabaje. Tiene que haber un día regular y fijo de descanso; y los seis días consecutivos de trabajo se cuentan empezando el día después del de descanso, no importa qué otros días de trabajo durante la semana de trabajo no se han trabajado por razones ajenas al requisito del día de descanso.

La única diferencia sustancial en los problemas suscitados por los errores 3ro. y 4to. es que el tercer error trata exclusivamente de estos dos empleados del taller. Al argumentar este error, la compañía aduce el argumento que hemos discutido antes. Después de entrar en vigor la Ley núm. 289 el 9 de abril de 1946, aparentemente algunos de los empleados del taller trabajaron desde el 9 de abril hasta el 13 de dicho mes, y descansaron el domingo, 14 de abril, sin haber trabajado seis días consecutivos; entonces trabajaron desde el 15 al 20 de abril, seis días consecutivos, y descansaron de nuevo el domingo, 21 de abril. Como ya hemos indicado, esto no quiere decir, como parece temer la compañía, que los días trabajados se empiezan a contar desde el 9 de abril, y que además de los domingos, estos empleados tenían

derecho a un segundo día de descanso después de seis días intermitentes de trabajo. Aparte de la necesidad de continuidad, la semana de trabajo, según hemos indicado antes, se calcula no como que empieza el día en que entró en vigor la ley, sino el día después del día regular de descanso perteneciente a los seis días anteriores de.trabajo.

Nuestra conclusión es que la corte de distrito cometió los errores tercero y cuarto al resolver que los seis días de trabajo no tenían que ser consecutivos. Resolvemos que, tomando la semana de trabajo regular de cada empleado como una unidad separada, éste debe trabajar seis días consecutivos para tener derecho al séptimo día de descanso.

## IV

█ El quinto señalamiento trata de la resolución de la corte inferior al efecto de que los seis días de trabajo deben computarse a base de un día de ocho horas, pero que "un obrero [que] trabaja en un día cuatro horas, debérá trabajar en otro u otros días tiempo suficiente hasta completar las ocho horas para que se considere que ha trabajado uno de los seis días de que habla la ley."

Si nos hubiéramos adherido a nuestra opinión de que bajo la Ley núm. 289 el día de descanso fué concedido con paga, sería imperativo que determinásemos, según hicimos en la Parte IV de nuestra opinión original, qué constituye un día de trabajo con el fin de cacular la paga por el día de descanso. Esto sería una tarea difícil, como se demuestra en la Parte IV de nuestra opinión original, toda vez que la Ley no define un día de trabajo. Pero este error ha perdido un gran caudal de importancia en virtud de nuestra conclusión en la Parte I de la presente opinión al efecto de que el día de descanso es sin paga.

Sin embargo, -aún tenemos que determinar si el trabajar por menos del número de horas comprendidas en un día regular de trabajo durante cualquiera de los seis días con-

secutivos trabajados, priva al empleado de su derecho a un día de descanso. La importancia de este punto es que si un empleado de una industria exenta no tiene derecho a su día regular de descanso, entonces no tiene derecho a doble paga si trabaja en vez de descansar durante dicho día.

La corte de distrito resolvió que el empleado debe trabajar el equivalente de seis días de ocho horas cada uno con el fin de tener derecho a un día de descanso, y que si se trabajan menos de ocho horas diarias, el tiempo trabajado es sumado hasta que alcance un total de 48 horas trabajadas, momento en el cual el empleado se hace acreedor al día de descanso.

No podemos convenir con esta interpretación de la Ley. Produciría las mismas condiciones caóticas discutidas en la Parte III: las partes vendrían obligadas a tratar como el día de descanso un día en mitad de semana el cual ambas desean se trabaje. Pero esto no significa necesariamente que deban trabajarse ocho horas durante seis días consecutivos. No puede negarse que si la sección 1 de la Ley núm. 289 es interpretada literalmente, hay considerable campo para la contención de que la ley se refiere a seis días completos de trabajo más bien que a trabajo durante seis días. Pero no tenemos que interpretar la sección 1 literalmente si con ello se frustra la intención de la Legislatura. Véase la Parte III, donde interpretamos seis días de trabajo en el sentido de seis días consecutivos de trabajo; *Pérez Segovia v. Corte,* supra, Parte II. Creemos que lo que la Legislatura quiso decir fué que, tratando cada siete días como una unidad separada, si un empleado trabaja cualquier período de tiempo, no importa lo corto que fuere, en cada uno de los seis días consecutivos, éste tiene derecho a descansar el séptimo sin paga; y que si lo trabaja recibirá paga doble. No es mucho pretender que un patrono que le exige a sus empleados regulares, no ocasionales, que trabajen du-

rante siete días consecutivos les pague doble compensación por el séptimo día. Por otro lado, relevar a los patronos de este requisito a base de que en uno de los seis días un empleado regular trabajó una hora menos de ocho, virtualmente dejaría el día de descanso para empleados regulares a merced del patrono.

Nuestra conclusión sobre el quinto señalamiento es que la corte inferior cometió error al resolver que, a los fines de hacerse acreedor el empleado al día de descanso, el día de trabajo debe consistir de ocho horas. También erró al resolver que el tiempo trabajado cada día debe sumarse totalmente, con un día de descanso después de cuarenta y ocho horas de trabajo. Por el contrario resolvemos que, tratando cada siete días como una unidad, empezando con el día siguiente al día regular de descanso, un empleado tiene derecho a un día de descanso sin paga si trabaja cualquier parte de cada uno de seis días consecutivos.

## V

■ La corte de distrito no pasó sobre la cuestión suscitada en el séptimo señalamiento. Algunos de los empleados de la compañía trabajan nueve horas y se les paga la novena hora a tiempo doble. *Cardona* v. *Corte*, 62 D.P.R. 61. Suponiendo que venía obligada a conceder un día de descanso con paga, la compañía solicita una decisión al efecto de que la Ley núm. 289 no sostiene la contención de estos empleados de que la paga por su día de descanso consiste de ocho horas a paga sencilla y una novena hora a paga doble.

En la Parte V de nuestra opinión original convinimos con la contención de la compañía de que la paga por el día de descanso no incluye cualquier paga por horas trabajadas en exceso de ocho horas. Sin embargo, este señalamiento se torna académico en vista de nuestra conclusión en la Parte I al efecto de que el día de descanso es sin paga.

## VI

 De igual manera se han tornado académicos los señalamientos, 8vo., 9no., 10mo., 11mo. y 12mo. La compañía en estos errores atacó la Ley núm. 289 por inconstitucional, si ésta se interpretase en el sentido de conceder un día de descanso con paga. Pero admite que si la Ley concede un día de descanso sin paga, es válida. *People* v. *C. Klinck Packing Co.,* 108 N.E. 278 (N.Y., 1915); *El Pueblo* v. *García & García,* 22 D.P.R. 817.

## VII

 El décimotercer error es que la corte de distrito cometió error al resolver que la Ley núm. 289 no infringe el artículo 34 del Acta Orgánica, 48 U.S.C. sec. 832, al efecto de que "No se aprobará ningún proyecto de ley, con excepción de los de presupuesto géneral que contenga más de un asunto el cual deberá ser claramente expresado en su título; pero si algún asunto que no esté expresado en el título fuere incluído en cualquier ley, esa ley será nula solamente en aquella parte de ella que no haya sido expresada en el título."

La Ley núm. 289 se intitula "Ley fijando un día de descanso por cada seis (6) días de trabajo en beneficio de los empleados de establecimientos comerciales e industriales, empresas y negocios lucrativos que no estuvieren sujetos a las disposiciones sobre cierre al público del artículo 553 del Código Penal, según ha sido subsiguientemente enmendado, disponiendo que las horas trabajadas durante el día de descanso se pagarán a un tipo de salario igual al doble del tipo convenido para las horas regulares, y para otros fines."

La compañía sostiene que el propósito de la Ley núm. 289 es proveer un día de descanso a los empleados que trabajan en negocios exentos de las disposiciones del artículo 553 del Código Penal; que esta materia está claramente expresada en el título; pero que la Ley impropiamente incluye asimismo una materia diferente, expresada también en el título,

o sea, doble paga para los empleados que trabajen el día de descanso.

Ésta es una contención frívola. Las disposiciones para un día de descanso y para paga doble si se trabaja el día, están íntimamente relacionadas. Ambas tienen que ver con la misma cuestión: asegurar normalmente un día de descanso, con la prevención de que si se exige trabajo en dicho día debido a alguna emergencia, el empleado recibirá paga doble por el mismo. Véase *Compañía Popular* v. *Corte,* 63 D.P.R. 121, 132. Convenir con esta contención sería en efecto resolver que cada sección de una ley de esta naturaleza debe ser una ley separada.

La compañía también arguye que la disposición contenida en la sección 3 de que "Ningún patrono podrá deducir suma alguna del salario de ningún empleado por concepto del día de descanso que establece esta Ley" no está incluída en el título de la Ley. Rechazamos este argumento por los motivos consignados en los casos de *Rivera* v. *Corte,* 62 D.P.R. 513, 538-40; *Sunland Biscuit Co.* v. *Junta de Salario Mínimo de Puerto Rico,* 68 D.P.R. 371; y *Gobierno de la Capital* v. *Consejo Ejecutivo,* 63 D.P.R. 434, 461-64.

Resolvemos que la Ley núm. 289 se ajusta a los requisitos establecidos por el artículo 34 del Acta Orgánica en cuanto a los títulos de las leyes aprobadas por nuestra Legislatura.

## VIII

■ Normalmente debiéramos ejercitar nuestra discreción para emitir una sentencia declaratoria solamente si la sentencia va a poner fin a la controversia entre las partes. Anderson, *Declaratory Judgments,* sec. 63, págs. 175-77; Borchard, *Declaratory Judgments,* 2da. ed., págs. 35, 56. *Cf. Gobierno de la Capital* v. *Consejo Ejecutivo,* supra, págs. 468-9. Pero este caso se resolvió por una sentencia sumaria basada en la demanda y en la contestación. Y modificaremos la sentencia en algunos aspectos. Si bien esperamos que

nuestras conclusiones en este caso estén razonablmente claras, nos damos cuenta de que las generalidades no deciden casos concretos. Los derechos de cada uno de los ocho empleados demandados y de otros en igual situación dependen de la aplicación de nuestras conclusiones a los hechos específicos del caso de cada empleado. En su consecuencia, puede que esta controversia no termine si confirmáramos la sentencia una vez modificada. Por consiguiente, creemos más propio modificar la sentencia y devolver el caso a la corte de distrito donde las partes tendrán la oportunidad, si lo creen conveniente, de enmendar sus alegaciones o presentar prueba, o ambas cosas, con el fin de obtener la adjudicación de los derechos de empleados específicos bajo los hechos específicos que afecten a cada uno de ellos, a la luz de nuestra opinión y sentencia.

*Se dejan sin efecto nuestra opinión y sentencia del 4 de mayo de 1948. En su lugar, por los motivos aquí expuestos, se dictará nueva sentencia modificando la dictada por la corte de distrito, proveyendo que (I) bajo la Ley núm. 289 los empleados de la demandante que trabajan por hora o por día tienen derecho a un día de descanso sin paga; (II) los empleados del taller de la demandante que trabajan desde el lunes hasta el sábado tienen derecho a descansar el domingo sin paga; (III) la semana regular de trabajo de cada empleado de la demandante se toma como una unidad separada; y debe éste trabajar seis días consecutivos para tener derecho bajo la Ley núm. 289 al séptimo día de descanso sin paga; (IV) tratando cada siete días como una unidad, empezando con el día siguiente al día regular de descanso, un empleado de la demandante tiene derecho a un día de descanso sin paga si trabaja cualquier parte de cada uno de seis días consecutivos; (V) en vista de nuestra conclusión de que el día de descanso es sin paga, se torna académica la contención de la demandante de que la paga por el día de descanso no incluye cualquier paga por horas extras tra-*

*bajadas en adición a ocho horas; (VI) la Ley núm. 289, interpretada en el sentido de que concede un día de descanso sin paga, no es inconstitucional; (VII) la Ley núm. 289 cumple con los requisitos fijados por el artículo 34 del Acta Orgánica para los títulos de las leyes aprobadas por nuestra Legislatura; y el caso será devuelto a la corte de distrito para ulteriores procedimientos no inconsistentes con esta opinión.([4])*

---

([4]) Dijimos en la nota 3 que, según resolvió correctamente la corte de distrito, si un empleado trabaja en vez de descansar su día de descanso, recibirá doble paga, no triple, al tipo de salario por hora de trabajo sencillo. No hemos incluído esta disposición en nuestra sentencia ya que parece que sobre este punto no existe controversia entre las partes. Los demandados aparentemente se han allanado a esta parte de la sentencia de la corte de distrito.